# Paperwork Reduction Act of 1980

The provisions of the Paperwork Reduction Act of 1980 giving the Office of Management and Budget authority to review and approve agency "information collection requests" do not apply to reporting and recordkeeping requirements contained in agency regulations which came into existence prior to the effective date of the 1980 Act. However, new regulations containing reporting or recordkeeping requirements must be developed in accordance with the procedures set forth in 44 U S.C. § 3504(h).

Section 3504(h) provides the exclusive procedure for OMB review and possible disapproval of information collection requirements contained in or specifically required by agency regulations; the more stringent procedures for OMB review set forth in 44 U.S C. §§ 3504(c) and 3507 apply only to agency information collection requests issued pursuant to or deriving from regulations.

The language and history of other provisions of the Paperwork Reduction Act, as well as its general scheme, support the conclusion that OMB has no authority under either § 3504(h) or § 3507 to review and disapprove existing agency regulations. Nonetheless, OMB is given substantial authority over existing regulations by other provisions of the Act, including § 3504(b).

June 22, 1982

## MEMORANDUM OPINION FOR THE COUNSEL TO THE
## VICE PRESIDENT AND FOR THE COUNSEL TO THE DIRECTOR,
## OFFICE OF MANAGEMENT AND BUDGET

This responds to your request for our opinion concerning the application of the Paperwork Reduction Act (the Act) to regulations that impose paperwork burdens.[1] This question has arisen, you have explained, because the Department of the Treasury has taken the position that Internal Revenue Service (IRS) regulations which impose paperwork burdens are not subject to those provisions of the Act directing the Office of Management and Budget (OMB) to review and approve an "information collection request." That term is defined by the Act as covering "a written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, or other similar method calling for the collection of information."[2] Under the Act, OMB is directed to review and

---

[1] The Paperwork Reduction Act, Pub. L No. 511, 96th Cong., 2d Sess (1980), 94 Stat. 2812, 44 U.S C §§ 3501–3520, took effect on April 1, 1981 In this opinion, the words "regulation" and "rule" will be used interchangeably. See 5 U.S C § 551(4).

[2] Section 3502(11) of the Act, 44 U S C. § 3502(11) (Supp. V 1981). Further citations to the Act will exclude the additional reference to Title 44 of the 1981 Supplement to United States Code Annotated, which includes the same section numbers as the Act itself.

388

approve each "information collection request," and to assign to each a control number that signifies OMB approval.[3] The Act provides that no person shall be subject to any penalty for failing to maintain or to provide information pursuant to an information collection request that has not itself been assigned the necessary control number.[4] In the present case, the Treasury Department argues that the portion of any regulation which imposes a paperwork burden is not an "information collection request" for purposes of the Act. In response, you have argued that the portion of a regulation imposing a paperwork burden is an "information collection request," and therefore is subject to OMB review and approval, and the assignment of a control number under the Act.

In addressing this issue, our analysis will proceed in four sections. First, we will summarize the Act's provisions that are relevant to this dispute. Second, we will set forth the central arguments of the Department of the Treasury, on the one hand, and OMB, on the other hand, as advanced in several memoranda addressed to this office.[5] Third, we will set forth our own analysis of the statute and its legislative history. Fourth, we will discuss in particular the additional arguments advanced on behalf of OMB's position in your memorandum of April 23, 1982.

As we will explain in considerably more detail in the balance of this memorandum, we have concluded that requirements for the maintenance and provision of information contained in regulations that came into existence prior to the effective date of the Act are not subject to the information collection request approval procedures contained in §§ 3504(c) and 3507 of the Act, but that new regulations must be developed in accordance with the OMB coordination process created by § 3504(h). OMB is, however, given broad powers by the Act to initiate and review proposals for changes in existing regulations and to coordinate and improve agency information practices whether contained in regulations or elsewhere. The IRS is subject to OMB's authority in this regard to the same extent as other Executive Branch agencies. The Paperwork Reduction Act is a broad charter for OMB to manage, coordinate and improve federal information practices limited, of course, by existing agency authority over the substantive content of policies and programs.

## I. Summary of the Act

The Paperwork Reduction Act of 1980 supplanted the Federal Reports Act of 1942.[6] The purpose of the 1942 statute was to minimize the burdens of furnishing "information" that were placed by the federal government on business enterprises and others.[7] "Information" was defined in the 1942 statute as "facts obtained or solicited by the use of *written report forms, application forms, schedules,*

---

[3] *See* §§ 3504(c)(3)(A) (the OMB Director's information collection request clearance functions "shall include . . ensuring that all information collection requests .   display a control number") & 3507(f)

[4] *See* § 3512

[5] For the sake of convenience, we will refer to the position expressed in your memoranda as "OMB's position," for those memoranda are concerned primarily with the powers that may be exercised by OMB under the Act

[6] The latter statute was 56 Stat 1078, 44 U S C §§ 3501–3511 (1976)

[7] *See* 44 U.S C § 3501 (1976).

*questionnaires, or other similar methods* calling either for answers to identical questions from ten or more persons other than agencies . . . of the United States or for answers to questions from agencies . . . of the United States which are to be used for statistical compilations of general public interest." (Emphasis added.)[8]

The Paperwork Reduction Act is described in the report of the Senate Committee on Governmental Affairs as a "rewrite" of the 1942 statute in response to renewed concerns in the late 1970s about the burdens imposed on the private sector by the government in its collection of information.[9] One of the specific changes made by the 1980 Act is its elimination of an exemption for the IRS—and certain other agencies—that had existed under the Federal Reports Act.[10] This is one of the chief reasons why the issue before us has arisen at this time. The 1980 Act's general purposes are to minimize "the Federal paperwork burden for individuals, small businesses, State and local governments, and other persons," minimize the cost to the federal government of collecting, maintaining, using and disseminating information and "make uniform Federal information policies and practices." § 3501. The term "burden" is defined as "the time, effort, or financial resources expended by persons to provide information to a Federal agency."[11]

Many of the 1980 Act's key provisions apply to an "information collection request." The definition of an "information collection request" covers not only the items covered by the 1942 statute, such as a written report form, application form, schedule, questionnaire, or other similar method for collecting information, but also a "reporting or recordkeeping requirement." Thus, as noted earlier, the 1980 statute defines an "information collection request" as "a written report form, application form, schedule, questionnaire, *reporting or recordkeeping requirement*, or other similar method calling for the collection of information." (Emphasis added.)[12] The Act defines the "collection of information" as the use of any of the foregoing methods to obtain facts or opinions in response to "identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies . . . of the United States" or "answers to questions posed to agencies . . . of the United States which are to be used for general statistical purposes." (Emphasis added.)[13] A "recordkeeping requirement" is defined as "a requirement imposed by an agency on persons to maintain specified records."[14] The term "reporting requirement" is not separately defined.

In addition to including a "reporting or recordkeeping requirement" in the definition of an "information collection request," the Paperwork Reduction Act

[8] 44 U.S C. § 3502 (1976) *See* H R Rep No 2722, 77th Cong., 2d Sess (1942), S Rep. No 1651, 77th Cong., 2d Sess (1942); 88 Cong. Rec 9165 (1942). *See also Emerson Electric Co* v *Schlesinger,* 609 F 2d 898, 905 (8th Cir. 1979) (the "two-fold purpose" of the Federal Reports Act was to "eliminate unnecessary duplication of effort by federal agencies in collecting information and to reduce the paperwork burden on persons supplying the information"), *Shell Oil Co* v *Department of Energy,* 477 F Supp. 413, 419–20 (D Del. 1979)

[9] S. Rep No 930, 96th Cong , 2d Sess 13 (1980)

[10] *See* 44 U.S C § 3507 (1976)

[11] Section 3502(3)

[12] Section 3502(11).

[13] Section 3502(4).

[14] Section 3502(16)

strengthened considerably the role of OMB in overseeing agencies' information collection activities.[15] Under § 3504(a), the OMB director "shall develop and implement Federal information policies, principles, standards, and guidelines and shall provide direction and oversee the review and approval of information collection requests" and "the reduction of the paperwork burden." The general information policy functions of the Director are set forth in § 3504(b). These functions include, *inter alia, "developing and implementing uniform and consistent information resources management policies* and overseeing the development of information management principles" (§ 3504(b)(1)), as well as *"initiating and reviewing proposals for changes in* legislation, *regulations,* and agency procedures to improve information practices . . ." (§ 3504(b)(2)) (emphasis added). Also, the Director is charged with "coordinating, through the review of budget proposals and as otherwise provided in this section [§ 3504], agency information practices" (§ 3504(b)(3)) and "evaluating agency information management practices to determine their adequacy and efficiency, and to determine compliance of such practices with the policies, principles, standards, and guidelines promulgated by the Director" (§ 3504(b)(5)).

Under § 3504(d), the Director is assigned certain statistical policy and coordination functions, including the development of "long range plans for the improved performance of Federal statistical activities and programs," "developing and implementing Government-wide policies, principles, standards, and guidelines concerning statistical collection procedures and methods" and "evaluating statistical program performance and agency compliance with Government-wide policies, principles, standards, and guidelines." Section 3504(e) assigns to the Director broad records management functions, which include promoting the coordination of records management with the information policies, principles and guidelines established by OMB under this Act. Section 3504(f) assigns to the Director certain privacy functions, which involve the development and implementation of policies and guidelines regarding information disclosure and confidentiality in compliance with the Privacy Act, 5 U.S.C. § 552a. Section 3504(g) assigns to the Director functions involving automatic data processing and telecommunications, including the development of federal policies and guidelines to govern the federal activities in these areas. Taken as a whole, this array of explicit powers granted to OMB under § 3504 is a formidable expression of Congress' intent to give OMB the tools necessary to act as the central authority in the oversight of the federal government's information management processes.

Of particular importance to the issues considered in this opinion are the authorities granted the OMB Director under §§ 3504(c) and 3507, including, *inter alia,* the power to review and approve "information collection requests proposed by agencies" under § 3504(c)(1), to determine whether the collection of information is "necessary for the proper performance of the functions of the agency" under § 3504(c)(2), and to ensure that all information collection

[15] *See* § 3504

requests, among other things, "display a control number" assigned to them by OMB under §§ 3504(c)(3)(A) and 3507. In addition, the OMB Director was required, upon enactment of the statute, to "set a goal to reduce the then existing burden of Federal collections of information by 15 per centum by October 1, 1982," and "for the year following, [to] set a goal to reduce the burden which existed upon enactment by an additional 10 per centum. . . ."[16]

The Act's "control number" requirement in §§ 3504(c)(3)(A) and 3507 assumes special significance in light of two additional provisions. Under § 3507(f), an agency "shall not engage in a collection of information without obtaining from the Director a control number to be displayed upon the information collection request." Also, under § 3512, "no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject" to the Act.

The statute specifically directs that "[e]ach agency shall be responsible for . . . complying with the information policies, principles, standards, and guidelines prescribed by the Director."[17] More particularly, the Act requires that an "agency shall not conduct or sponsor the collection of information unless, in advance of the adoption or revision of the request for collection of such information," the agency has, *inter alia*, "submitted to the Director [of OMB] the proposed information collection request [and] copies of pertinent regulations and other related materials" and the Director "has approved the proposed information collection request, or the period for review of information collection requests by the Director provided under subsection (b) [60 days, with a possible additional 30 days] has elapsed."[18]

In addition to these provisions pertaining to an "information collection request" as defined in the Act, there is a provision, § 3504(h), dealing specifically with regulations. Since the relationship between § 3504(h) and the procedures set forth in §§ 3504(c) and 3507 regarding an "information collection request" is the major issue in the present dispute, we will explain the requirements of § 3504(h) in some detail.

Each agency is directed to forward to the OMB Director a copy of "any proposed rule which contains *a collection of information requirement*" as soon as practicable, and no later than the publication of a notice of proposed rulemaking in the Federal Register. (Emphasis added.)[19] Within 60 days after the notice of proposed rulemaking is published in the Federal Register, the OMB Director "may file public comments pursuant to the standards set forth in section 3508 on *the collection of information requirement* contained in the proposed rule." (Emphasis added.)[20] When a final rule is published, "the agency shall explain

---

[16] Section 3505(1)
[17] Section 3506(a).
[18] Sections 3507(a)(2) & (3)
[19] Section 3504(h)(1)
[20] Section 3504(h)(2). Section 3508 provides that "[b]efore approving a proposed information collection request, the Director shall determine whether the collection of information by an agency is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility . . . "

how *any collection of information requirement"* contained therein responds to any comments made by the Director or the public, or explain why the agency rejected those comments. (Emphasis added.)[21]

The OMB Director is not authorized to disapprove any collection of information requirement contained in an agency rule if he received notice of the rule and if he failed to comment on it within 60 days of publication of the notice of proposed rulemaking.[22] However, "[n]othing in this section" may be read as barring the Director, in his discretion:

> (A) from disapproving any *information collection request* which was not specifically required by an agency rule;
>
> (B) from disapproving any *collection of information requirement* contained in an agency rule, if the agency failed to comply with the requirements of paragraph (1) of this subsection; or
>
> (C) from disapproving any *collection of information requirement* contained in a final agency rule, if the Director finds within sixty days of the publication of the final rule that the agency's response to his comments filed pursuant to paragraph (2) of this subsection was unreasonable; [or]
>
> (D) from disapproving any *collection of information requirement* where the Director determines that the agency has substantially modified in the final rule the collection of information requirement contained in the proposed rule where the agency has not given the Director the information required in paragraph (1), with respect to the modified *collection of information requirement,* at least sixty days before the issuance of the final rule. (Emphasis added.)[23]

The subsection requires the OMB Director to "make publicly available any decision to disapprove a collection of information requirement contained in an agency rule, together with the reasons for such decision."[24] Furthermore, § 3504(h)(8) states that the subsection "shall apply only when an agency publishes a notice of proposed rulemaking and requests public comments." Although, as noted earlier, the phrase "information collection request" is defined in § 3502(11), the recurring phrase in § 3504(h), "collection of information requirement," is not separately defined in the statute.

## II. Arguments Advanced by the Treasury Department and OMB

We have received a number of memoranda setting forth both the Treasury Department's and OMB's positions regarding the Paperwork Reduction Act's

---

[21] Section 3504(h)(3)
[22] *See* § 3504(h)(4).
[23] Section 3504(h)(5).
[24] Section 3504(h)(6)

application to regulations that impose paperwork burdens.[25] In general, the Treasury Department's view is that the only provision in the Act setting forth procedures for OMB review and possible disapproval of informational aspects of regulations is § 3504(h). In contrast, OMB's position is that not only § 3504(h), but also provisions dealing with an "information collection request," including § 3507, set forth procedures for OMB review of regulations that impose paperwork burdens. We will summarize in turn each of these opposing interpretations.

## A. Treasury Department Position

The Treasury Department argues that the only provision in the Act setting forth specific procedures for OMB review and possible disapproval of aspects of regulations imposing paperwork burdens is § 3504(h).[26] If Treasury is correct in this regard, the exclusive, specific procedural mechanism establishing OMB's responsibilities for the review of regulations would be that created by § 3504(h), as opposed to the mechanism for OMB's review of forms and questionnaires established by §§ 3507 and 3504(c).[27]

The Treasury Department advances three major arguments on behalf of its interpretation. The first argument rests on the language and purposes of § 3504(h) itself. Treasury notes that § 3504(h) establishes a detailed procedural scheme for OMB review of collection of information requirements in regulations, and that no other provision in the statute deals in such a way with regulations. Treasury contends that this fact supports the inference that Congress intended § 3504(h) to provide the exclusive set of specified procedures for OMB

---

[25] We have received the following memoranda from Treasury: (1) Memorandum from Cora Beebe, Assistant Secretary, Department of the Treasury, to Christopher DeMuth, Administrator for Information and Regulatory Affairs, OMB, dated Dec. 24, 1981, (2) Memorandum from Kenneth Gideon, Chief Counsel, IRS, to Cora Beebe, dated Dec 23, 1981, (3) Memorandum from Arnold Intrater, Assistant General Counsel, Treasury Department, to Cora Beebe, dated Dec. 29, 1981, (4) Letter to Assistant Attorney General Theodore B. Olson from Peter Wallison, General Counsel, Treasury Department, dated Feb 8, 1982; (5) Memorandum to Assistant Attorney General Theodore B Olson from Peter Wallison, General Counsel, Treasury Department, also dated Feb. 8, 1982, and (6) undated staff memorandum, received in March 1982, responding to certain questions we asked at a meeting with Treasury representatives on March 9, 1982.

We have received the following memoranda setting forth OMB's position (1) Memorandum from C. Boyden Gray, Counsel to the Vice President, and Michael J. Horowitz, Counsel to the Director, Office of Management and Budget, to Assistant Attorney General Theodore B Olson, dated Jan. 15, 1982, containing your opinion request, (2) a draft staff memorandum dated March 1, 1982, responding to Treasury's letter and memorandum of Feb 8, 1982; and (3) Memorandum from C Boyden Gray, Counsel to the Vice President, and Michael J. Horowitz, Counsel to the Director, Office of Management and Budget, to Assistant Attorney General Theodore B. Olson, dated April 23, 1982, responding to a memorandum from Assistant Attorney General Olson to Robert Bedell, Deputy General Counsel, OMB, dated April 5, 1982, which identified certain issues raised in various submissions this office had received

In addition, we have received a memorandum generally supporting the Treasury position from Eric Fygi, Deputy General Counsel, Department of Energy, dated Mar. 26, 1982.

[26] Section 3504(b)(2) provides that the "general information policy functions" of the OMB Director shall include "*initiating and reviewing proposals for changes in* legislation, *regulations,* and agency procedures to improve information practices . . . ." (Emphasis added.) Thus, Treasury could not—and does not—argue that § 3504(h) is the only provision dealing at all with regulations. Rather, Treasury contends that the only specific procedures governing OMB review and possible disapproval of informational aspects of regulations under the Act are those set forth in § 3504(h). As discussed earlier, § 3504(b) gives OMB rather broad review, oversight, and coordination powers with regard to regulations.

[27] There are a number of differences in the two sets of procedures Section 3504(h), for instance, does not provide for the assignment of control numbers to regulations Section 3507, along with § 3504(c), does require OMB to review and approve information collection requests and to ensure that such requests display control numbers.

394

review and possible disapproval of informational aspects of regulations under the Act. This inference is also said to be supported by the notion that if § 3504(h) were not the exclusive set of specified procedures for OMB review of regulations, but that instead §§ 3504(c) and 3507 also could apply to regulations imposing paperwork burdens, § 3504(h) would be rendered essentially superfluous.

In support of this conclusion, Treasury relies in addition on the statement by Senator Kennedy when he introduced on the Senate floor an amendment to § 3504(h) that ultimately was enacted. Under § 3504(h) of the bill as reported out of the Senate Committee on Governmental Affairs, OMB was directed to ensure that agencies, in developing rules and regulations, used efficient methods for collecting information.[28] Senator Kennedy expressed concern about § 3504(h) as reported out of the Committee because it "would permit the Director of OMB to overturn a rule which was adopted by an agency without providing any procedural rights for the people affected by the rule or for the agency that promulgated the rule."[29] Accordingly, Senator Kennedy introduced an amendment to § 3504(h) containing the detailed set of procedures that we summarized in the previous section. In view of this history, the Treasury Department contends that if a provision of the Act which lacks the procedural formalities set forth in § 3504(h)—namely, § 3507—were available for use as the mechanism for OMB review and potential disapproval of informational aspects of regulations, the fundamental purpose of the amendment to § 3504(h) would be frustrated.

Treasury's second major contention is that the statute's provisions other than § 3504(h) support its reading of § 3504(h). Section 3507(a)(2)(A) provides that no agency shall conduct or sponsor the collection of information unless "the agency . . . has submitted to the Director [of OMB] the proposed information collection request, *copies of pertinent regulations* and other related materials as the Director may specify." (Emphasis added.) Treasury suggests that this language establishes a clear distinction between an "information collection request," on the one hand, and "related materials" such as "pertinent regulations," on the other hand. This distinction is said to buttress the idea that regulations should be treated as entirely separate from an "information collection request" subject to review under § 3507.

Furthermore, Treasury's argument depends on a comparison of the first and last sentences of § 3507(c), as follows:

> *Any disapproval by the Director, in whole or in part, of a proposed information collection request of an independent regulatory agency, or an exercise of authority under section 3504(h) or 3509 concerning such an agency, may be voided, if the agency by a majority vote of its members overrides the Director's disapproval or exercise of authority.* The agency shall certify each override to the Director, shall explain the reasons for exercising

[28] *See* S Rep No 930, 96th Cong., 2d Sess. 88 (1980).

[29] 126 Cong. Rec 30178 (1980). The language of § 3504(h) as contained in the predecessor Senate bill is quoted at pages 18 and 19 *infra*.

the override authority. *Where the override concerns an informa-*
*tion collection request, the Director shall without further delay*
*assign a control number to such request, and such override shall*
*be valid for a period of three years.* (Emphasis added.)

Section 3507(c) was included in the Act to provide a means by which so-called independent agencies could preserve a measure of their "independence" by overriding OMB disapprovals of their actions under the Act.[30] In the first sentence of § 3507(c), reference is made to a "disapproval . . . of a *proposed information collection request . . ., or* an exercise of authority under *section 3504(h) or 3509. . . ."* (Emphasis added.)[31] In the last sentence, only a disapproval of an information collection request is referred to: *"Where the override concerns an information collection request,* the Director shall without further delay assign a control number to such request. . . ."* (Emphasis added.) The omission in the last sentence of any reference to exercises of authority under § 3504(h) or § 3509 is viewed by Treasury as supporting its position that Congress never intended that control numbers should be assigned to regulations under § 3504(h), or, indeed, § 3509. Under this interpretation, the last sentence of § 3507(c) is a purposeful reflection of Congress' intent to keep entirely separate the procedures governing regulations set forth in § 3504(h), on the one hand, and the procedures governing an "information collection request" set forth in § 3507 (including the control number requirement), on the other hand.[32]

Treasury's third main argument rests on certain passages in the legislative history. For instance, Treasury finds support in the explanation of an "information collection request" in the Senate Committee report, which states that the term "refers to the actual instrument used for a collection of information."[33] Treasury argues that a form or questionnaire issued pursuant to a regulation could be an "actual instrument" for the collection of information, but that it is an unduly strained use of words to say that a portion of a regulation itself could be such an "actual instrument."

---

[30] *See* H.R. Rep No. 835, 96th Cong , 2d Sess 21–22 (1980), S. Rep No. 930, 96th Cong., 2d Sess 14–15, 47 (1980)

[31] Section 3509 provides that the OMB Director "may designate a central collection agency to obtain information for two or more agencies if the Director determines that the needs of such agencies for information will be adequately served by a single collection agency, and such sharing of data is not inconsistent with any applicable law."

[32] Treasury also argues that certain language in § 3504(h) supports its position For instance, Treasury notes that § 3504(h)(2) states that within 60 days after publication in the Federal Register of a notice of proposed rulemaking, the OMB Director "may file public comments pursuant to the standards set forth in section 3508 on the collection of information requirement contained in the proposed rule " The standards set forth in § 3508 apply when the Director is deciding whether to approve a proposed "information collection request " Treasury argues that if a collection of information requirement for purposes of § 3504(h) were to be treated in the same manner as an information collection request under § 3507, as OMB suggests, it would have been unnecessary for Congress to cross-reference § 3508 in § 3504(h)(2).

In addition, Treasury notes that § 3504(h)(5)(A) specifically provides that nothing in § 3504(h) prevents the OMB Director "from disapproving any information collection request which was not specifically required by an agency rule    " Treasury suggests that by including this provision in § 3504(h), Congress reaffirmed that the disapproval of an "information collection request" is an entirely separate matter from the review of a "collection of information requirement" under § 3504(h)

[33] S Rep No 930, 96th Cong , 2d Sess. 39 (1980)

In addition, Treasury relies on a statement by Congressman Horton during debate on the bill shortly before it passed the House of Representatives. Congressman Horton's comments focused on § 3504(h), as follows:

> *OMB's authority to review and comment on portions of proposed regulations which require the collection of information is supplemental to that agency's authority to approve or reject specific information collection requests.* No matter what its action may have been with regard to a proposed regulation, OMB may freely approve or reject any specific collection request deriving from such a regulation. (Emphasis added.)[34]

Treasury stresses that Congressman Horton apparently distinguished between OMB's authority "to *review and comment on* portions of proposed regulations" under § 3504(h), on the one hand, and OMB's authority "to *approve or reject* specific information collection requests,*" on the other hand (emphasis added). This distinction is said to support Treasury's basic position that provisions authorizing OMB to "approve or reject" an information collection request, including § 3507, are necessarily separate from and should not be confused with the procedures for OMB "review and comment" on regulations under § 3504(h).

## B. OMB Position

The position of the Office of Management and Budget and the Office of the Vice President, as reflected in your memoranda to us, is that Treasury wrongly interprets the Act when it concludes that § 3504(h) is the only provision setting forth specific procedures governing OMB review of regulations imposing paperwork burdens.

A central argument supporting OMB's position is that the statute's definition of an "information collection request" is broad enough to encompass portions of regulations that impose reporting or recordkeeping requirements. The definition is as follows:

> . . . a written report form, application form, schedule, questionnaire, *reporting or recordkeeping requirement,* or other similar method calling for the collection of information. (Emphasis added.)[35]

OMB argues that a regulation which contains a "reporting or recordkeeping requirement" by definition contains an "information collection request" subject to the procedures of § 3507.[36]

---

[34] 126 Cong Rec 31228 (1980).

[35] Section 3502(11)

[36] Assuming *arguendo* that a regulation could contain an "information collection request" as defined in § 3502(11) of the Act, a question would arise whether the entire regulation should be deemed such a "request," or whether only some segregable portion of a regulation containing the request, if any, should be so viewed For purposes of this opinion, we will speak about the possibility of a regulation "containing" an "information collection request" (when describing OMB's position) without deciding this additional question, which we need not decide for purposes of our analysis

OMB buttresses its position by referring to a statement in the Senate Committee report that "[t]he imposition of a federal paperwork burden does not depend on how the questions are asked of the respondent, but rather on the fact the Federal government has asked or sponsored the asking of questions."[37] This statement is said to support the view that the "actual instrument" used for the collection of information need not be a form, but could be an oral comment, a regulation, or any other means of communicating the request.

Furthermore, OMB contends that an interpretation of the Act which does not treat reporting or recordkeeping requirements in regulations as information collection requests subject to § 3507 would frustrate the Act's underlying purpose, namely, the reduction of the paperwork burden imposed by the federal government. One of the ways the Paperwork Reduction Act sought to achieve this purpose was to eliminate the exemption that had applied to the IRS and certain other entities under the Federal Reports Act.[38] OMB argues that the elimination of the IRS exemption is inconsistent with Treasury's view that IRS regulations may be reviewed by OMB only under § 3504(h).

In support of its view that all regulations containing reporting or recordkeeping requirements must be assigned control numbers under § 3507, OMB refers to passages in the legislative history stating that each "information collection request" should be assigned a control number. For example, OMB refers to a statement in the Senate Committee report that "no agency shall engage in a collection of information without obtaining from the Director a control number to be displayed upon *the information collection request*." (Emphasis added.)[39] Another passage in the report relied upon by OMB states:

> The Director's responsibility to ensure all collections of information display a control number corresponds to the requirement of section 3507(f) which states *an agency shall not engage in a collection of information without obtaining a control number from the Director.* (Emphasis added.)[40]

In response to Treasury's discussion of the Senate's amendment to § 3504(h), OMB suggests that the amendment's purposes can be achieved under its interpretation of the Act. OMB argues that all that § 3504(h) requires is that once new rulemaking commences, the procedures of § 3504(h) are to be followed. This is consistent, OMB suggests, with its view that under § 3507 OMB can review and approve (or not approve) information collection requests contained in regulations that already were in existence when the Act became effective. If OMB disapproves such a request in such a regulation, under OMB's view the agency has two choices: it could either revise the information collection request in accordance

---

[37] S. Rep. No 930, 96th Cong., 2d Sess 39 (1980). As we discuss later in this memorandum, this statement is taken somewhat out of context by OMB In context, it appears to relate exclusively to the distinction between oral and written requests for information

[38] *See* S. Rep. No 930, 96th Cong , 2d Sess. 13 (1980); H R. Rep. No. 835, 96th Cong., 2d Sess. 19 (1980).

[39] S Rep. No 930, 96th Cong , 2d Sess 48 (1980).

[40] *Id* at 42

with OMB's concerns, assuming that this could be done without altering the underlying regulation, or initiate new rulemaking to change the regulation in order to accommodate OMB's position.[41] Under OMB's interpretation, only the latter action would trigger the procedures of § 3504(h).

In addition, OMB disputes the Treasury Department's reading of the last sentence of § 3507(c), which provides that "[w]here the override concerns an information collection request, the Director shall without further delay assign a control number to such request, and such override shall be valid for a period of three years." As noted earlier, the first sentence of the subsection refers to OMB disapprovals of a proposed information collection request *or* an exercise of OMB's authority under §§ 3504(h) *or* 3509. OMB argues that the introductory phrase in the last sentence, "[w]here the override concerns an information collection request," implicitly distinguishes between OMB disapproval of an information collection request—*whether or not subject to §§ 3504(h)*—and an exercise of authority under § 3509, which pertains to the designation of a central collection agency and thus has no bearing on the clearance of information requests. In short, OMB's position is that § 3507(c) lends no support to Treasury's view that the Act distinguishes between the review of information collection requests (and the assignment of control numbers thereto), on the one hand, and exercises of authority under § 3504(h), on the other hand.[42]

### III. Analysis of the Act's Language and Legislative History

Before developing our own analysis of the statute, it appears necessary to clarify precisely the issue before us. As we understand the fundamental dispute presented to us for resolution, Treasury and OMB are not in disagreement about the status of forms, schedules, or questionnaires which are issued pursuant to statutes or regulations and which impose paperwork burdens. Both appear to be in agreement—and we concur—that such forms, schedules, or questionnaires in general are "information collection requests" under the Act subject, among other things, to § 3507.[43] Furthermore, Treasury does not contend that regulations imposing paperwork burdens are not subject to any of the Act's requirements. Rather, Treasury argues, as stated above, that regulations are subject to the OMB review-and-possible-disapproval mechanism stated in the Act in § 3504(h), not to the mechanism set forth in §§ 3504(c) and 3507. That is the specific issue we must address.

In analyzing this issue, we will turn first to § 3504(h) and its legislative history. We then will discuss other provisions of the statute. Finally, we will examine the Act's general scheme.

---

[41] *See* Memorandum from C Boyden Gray and Michael Horowitz, entitled "Paperwork Reduction Act," at page 4 (Jan. 15, 1982) This memorandum also argues that regulations proposed and promulgated after the Act's effective date ultimately are to be assigned control numbers under § 3507 after the regulations have been promulgated in a manner consistent with § 3504(h).

[42] The arguments set forth in the memorandum of C Boyden Gray and Michael Horowitz dated April 23, 1982, will be discussed in greater detail in section IV below.

[43] The ultimate decision, of course, whether or not a *particular* form is an "information collection request" will turn on the facts of each case as analyzed in light of the Act's provisions.

## A. *Section 3504(h)*

(1) The House and Senate bills. A full understanding of § 3504(h) requires knowledge of the provision's history. Both of the bills reported out of the responsible committees of the House of Representatives and the Senate contained a § 3504(h), which in both cases granted OMB broad powers to review regulations imposing paperwork burdens. Section 3504(h) of the House bill, H.R. 6410, provided:

> (h) Other functions of the Director shall include ensuring that, *in developing rules and regulations,* agencies—
>  (1) utilize efficient methods to collect, use, and disseminate necessary information;
>  (2) provide an early and substantial opportunity for the public to comment on proposed means of collecting information related to such rules and regulations; and
>  (3) make assessments of the consequences of alternative methods of implementing the statutory goals of such rules and regulations (including alternative methods of collecting information). (Emphasis added.)[44]

Section 3504(h) of the Senate bill, S. 1411, provided:

> (h) The Director shall, subject to section 3507(c) of this chapter,[45] ensure that, *in developing rules and regulations,* agencies—
>  (1) utilize efficient means in the collection, use, and dissemination of information;
>  (2) provide an early and meaningful opportunity for the public to comment on proposed means for collection of information; and
>  (3) assess the consequences of alternative means for the collection, use, and dissemination of information. (Emphasis added.)[46]

The meaning of these predecessor provisions may be confirmed by reference to the relevant committee reports. Both reports explained that § 3504(h) in the respective bills constituted a general authorization for OMB to assure that agencies, in developing regulations, minimized the paperwork burden imposed by the federal government. As the report of the House Committee on Government Operations put it:

> *Under H.R. 6410, the OMB Director is to ensure that the agencies, in developing rules and regulations, use efficient meth-*

---

[44] H R Rep. No. 835. 96th Cong , 2d Sess 44 (1980).
[45] Section 3507(c), which gives independent regulatory agencies the power to override OMB disapprovals under the Act, is quoted above
[46] S. Rep No. 930. 96th Cong., 2d Sess. 88 (1980).

*ods to collect, use, and disseminate the necessary information.* The Committee views this function as similar to the present OMB function of overseeing agency activities under Executive Order 12044 [which was the Carter Administration Executive Order dealing with regulatory reform].[47]

A question was raised during the hearings as to whether the bill's language meant the OMB office was to have a regulatory reform function. *Regulatory reform is a separate issue from the function assigned by H.R. 6410.* Under the bill, OMB is assigned the responsibility for reviewing, [sic] reporting and recordkeeping requirements imposed on the public by regulations. Regulatory reform, on the other hand, deals with major modifications in agency responsibilities. *The Committee intends that OMB continue its effort in overseeing the information aspects of Government regulations. However, the assignment of regulatory reform to the Office of Federal Information Policy would dilute the information functions assigned under this bill.* (Emphasis added.)[48]

As the report of the Senate Committee on Governmental Affairs explained:

*Section 3504(h) of the bill mandates the Director to ensure that in developing rules and regulations agencies take steps to minimize the information burden of regulations.* The Committee views this function as similar to the present OMB function to

---

[47] Executive Order No. 12044, 43 Fed Reg. 12661 (1978), entitled *Improving Government Regulations*, contained a number of provisions calling upon agency heads to improve the analysis underlying new regulations, particularly regulations that met the order's criteria of "significant" regulations in economic or other terms (§ 2(e)) For instance, a regulatory analysis was required for significant regulations Such an analysis was to include a careful examination of possible alternatives to the approach ultimately proposed by the agency and a justification of the choice that was made (§§ 2 & 3). In addition, the order required agencies periodically to review their existing regulations to determine whether they were achieving the order's goals, which included, among other things, minimizing compliance costs, paperwork and other burdens on the public (§§ 4 & 1(e)) Section 5 gave general powers of oversight of the order's provisions to OMB Sections 5(a) and 5(b) required agencies to prepare reports for implementing the order and to submit the reports to OMB for review and approval. Section 5(c) provided that OMB "shall assure the effective implementation of this Order." Accordingly, Executive Order No 12044 required agencies to review new and existing regulations in terms of such goals as minimizing paperwork and other burdens on the public, and it assigned to OMB general authority to assure the achievement of these goals The Order did not set forth specific procedures by which OMB was to conduct its oversight activities.

[48] H.R. Rep. No 835, 96th Cong , 2d Sess. 9 (1980) A later passage in the House Committee report underscored that the bill was intended to cover regulations imposing paperwork burdens This point was made in the context of a discussion of the bill's definition of the "collection of information," which included a reference to a "reporting and recordkeeping requirement." The report noted that the Securities and Exchange Commission had strongly recommended that the bill "be amended to narrow the definition of 'collection of information' to exclude reporting required in connection with statutorily authorized [sic] regulatory, enforcement, or oversight efforts " The Committee agreed with the SEC about the close relationship between policymaking and information management issues, but added that regulatory agencies in the Executive Branch, such as the Environmental Protection Agency, "have been able to justify to OMB their need for information used to establish policy or for other purposes." The Committee concluded that the independent regulatory agencies "should also be capable of doing so." The Committee confirmed that its broad definition of a "collection of information" was intended to clarify the term's coverage "to force SEC and any others who might apply a restrictive interpretation to comply with statutory information collection clearance requirements. The Committee fully expects [the] SEC to comply with the 'more extensive' definition of collection of information as contained in H R 6410 " *Id* at 23

oversee agency activities under Executive Order 12044.[49] The importance of this linkage between OMB's existing responsibility for overseeing the regulatory process with the closely related information management functions assigned by the bill was stressed by the Comptroller General in his comments to the Committee[:]

> This relationship between the regulatory process and information management is reflected in OMB's existing Office of Regulatory and Information Policy. We believe this combination of functions has worked well. *The principal areas of growth in Federal paperwork burdens are associated with new regulations.* Therefore, it seems appropriate to retain the existing link between the functions for controlling both regulatory and paperwork burdens.

The Committee intends that the Director of OMB continue efforts to oversee the information management and burden aspects of government regulations. *This emphasis has great promise for minimizing the explosion of paperwork demands on the public because new regulations are causing the greatest growth in information requirements. However, the Committee does not intend that 'regulatory reform' issues which go beyond the scope of information management and burden be assigned to the office by the Director.* Recent initiatives such as the trucking and airline deregulations are examples of regulatory reform issues whose assignment to the Office would dilute the information function assigned by this bill. (Emphasis added.)[50]

Accordingly, both the House and the Senate Committees confirmed that § 3504(h) in the House and Senate bills was designed to ensure that agencies, *in developing* regulations, minimized the paperwork burden associated with the regulations. Although OMB's function under § 3504(h) was acknowledged to have some similarities with the oversight role performed during the Carter Administration under Executive Order No. 12044, it was sharply distinguished by both Committees from general "regulatory reform" activities. It is noteworthy that the Senate Committee report specifically referred to the burdens imposed by "new" regulations as the principal problem to be addressed.

(2) Debate in the Senate and House: the amendment of § 3504(h). If § 3504(h) had been enacted as it was reported out of the Senate and House Committees, it not only would have authorized OMB to review the development of agency rules in terms of paperwork considerations, but also would have done so without specifying in any detail the procedural steps to be taken in the course of such review. However, § 3504(h) was significantly amended on the Senate floor on November 19, 1980. Senator Kennedy provided the following statement of

---

[49] For a description of Executive Order No. 12044, *see* note 47, *supra*

[50] S. Rep No 930, 96th Cong., 2d Sess. 8–9 (1980); *see also id.* at 15.

reasons for his amendment, which passed the Senate in the form in which he proposed it and finally was enacted:

> *As reported out of the Governmental Affairs Committee, the legislation raises some serious concerns about the role of the Office of Management and Budget (OMB) in overseeing the information collection activities of Federal agencies.* While I certainly support strong executive management of the Federal regulatory system, this management objective should be tempered by other legitimate public policy concerns. *This legislation would permit the Director of OMB to overturn a rule which was adopted by an agency without providing any procedural rights for the people affected by the rule or for the agency that promulgated the rule.* Thus, even if any agency has complied with all the appropriate procedural requirements for public notice and comment, and has spent years compiling an adequate agency record, this legislation would permit OMB to overturn that agency decision without even requiring OMB to justify its decision publicly. *This violates basic notions of fairness upon which the Administrative Procedure Act is based, as well as concepts of due process embodied in the U.S. Constitution.*
>
> Mr. President, I have proposed several amendments, accepted by the Governmental Affairs Committee, which deal with this, and other concerns. . . . Most importantly, *I have sponsored an amendment which limits the authority of OMB to overturn reporting, recordkeeping, and other information collection requirements adopted by a Federal agency in a rulemaking proceeding. This amendment establishes a procedural scheme which governs OMB's relationship with the Federal agencies.*
>
> First, an agency is required to notify OMB as soon as possible, but no later than the date upon which a notice of proposed rulemaking is published in the Federal Register, of a proposed information collection requirement.
>
> Second, the Director of OMB is required to comment on the agency's information collection requirements in the proposed rule within 60 days or forfeit its rights to review those requirements at a later time. In these comments, the Director of OMB would suggest alternative methods of collecting information more efficiently.
>
> Third, when the agency adopts its final rule, it must respond to those comments by modifying the information collection requirements or by explaining why it rejected OMB's suggestions.
>
> If the agency does not forward a copy of its proposed information collection requirements to OMB, OMB retains its right to review that request even though it has not filed comments during

the rulemaking proceedings. Moreover, if an agency intends to modify substantially the information collection requirements which were in the proposed rule, this amendment insures that OMB has at least 60 days to comment on these modified requirements before the final rule is issued.

> *This amendment would provide the final power to OMB to overturn an agency's recordkeeping or reporting requirements only if it made a public finding that the agency's response was 'unreasonable.' . . .*
>
> *This amendment would not affect OMB's right to review forms or other information collection requests which were not specifically required by an agency rule.*
>
> *In essence, this amendment is designed to force the agency and OMB to consider information collection requirements early in the process with a meaningful opportunity for public comment on OMB's alternatives.* (Emphasis added.)[51]

Several aspects of the foregoing explanation are worthy of note. First, the amendment to § 3504(h) was specifically designed to establish a set of procedures by which OMB would review and comment on information collection requirements in proposed rules. The amendment was offered in response to the concern that, absent such procedures, OMB could "overturn a rule which was adopted by an agency without providing any procedural rights for the people affected by the rule or for the agency that promulgated the rule."[52]

A central aspect of the amendment's procedural scheme was the requirement that OMB state publicly any decision to overturn an information collection requirement in a proposed rule in order to be consistent with what Senator Kennedy described as "basic notices of fairness upon which the Administrative Procedure Act is based, as well as concepts of due process embodied in the U.S. Constitution." 126 Cong. Rec. 30178 (1980). Also, under the amended § 3504(h), OMB's power ultimately to overturn an agency's recordkeeping or reporting requirement in a proposed rule is limited to certain circumstances, such as when OMB makes a public finding that the requirement is "unreasonable."

In addition, Senator Kennedy distinguished OMB's power to review regulations under § 3504(h) from OMB's power to review "forms or other *information collection requests* which were *not specifically required by an agency rule.*" (Emphasis added.) This distinction supports the proposition that the review under § 3504(h) of collection of information requirements required by, or contained in, a rule should not be confused with the review under other provisions of the statute of an "information collection request" not specifically required by a rule. This distinction also is reflected in a statement supporting Senator Kennedy's amendment made by Senator Danforth, who, after noting that the amendment's purpose was to "prevent OMB from undoing a collection of information

---

[51] 126 Cong. Rec 30178 (1980)
[52] *Id*

404

requirement specifically contained in an agency rule after that requirement has gone through the administrative rulemaking process if the OMB Director ignores the rulemaking process," added:

> *I note, however, that this limitation on OMB's authority is confined to requirements specifically contained in agency rules. It does not disturb OMB's authority to block information collection requests issued pursuant to rules,* neither is it license to agencies to avoid OMB review of paperkeeping requirements bootstrapped to vague requirements in agency rules. (Emphasis added.)[53]

As Senator Danforth thus confirmed, § 3504(h) as amended does not disturb OMB's power to reject information collection requests issued *pursuant to* rules, as distinct from information collection requirements specifically *contained in* rules.

On December 1, 1980, the House of Representatives debated the bill as amended by the Senate.[54] The most extensive explanation offered on the House floor of the amended § 3504(h) was the following by Congressman Horton:

> The most significant difference between the two measures [the Senate and House bills] is the inclusion of a new subsection 3504(h) in the Senate version. *The Senate provision is innovative in that it attempts to link the regulation-writing process with the collection of information by the Federal Government. The provision does this by mandating that OMB review and comment on each proposed regulation which contains a requirement for the collection of information.*
>
> Because subsection 3504(h) which the Senate has added to the bill is extremely complex, I think it is essential to clarify three points about it:
>
> *First, OMB's authority to review and comment on portions of proposed regulations which require the collection of information is supplemental to that agency's authority to approve or reject specific information collection requests. No matter what its action may have been with regard to a proposed regulation, OMB may freely approve or reject any specific collection request deriving from such a regulation.*
>
> Second, in reviewing proposed regulations, OMB may disapprove any collection requirement which it finds 'unreasonable'— which is to say, not of sound judgment in the opinion of the OMB Director. The purpose of § 3504(h)(5)(C) [the provision empowering OMB to disapprove "unreasonable" requirements] is

[53] 126 Cong. Rec 30179 (1980)

[54] *See* 126 Cong. Rec. 31227 (1980) (remarks of Chairman Brooks) (noting that one of the major respects in which the Senate bill differed from the House bill was that the former "insures that OMB's review of agency information collection requests will be coordinated with agency rulemaking procedures established by the Administrative Procedure Act or other similar legislation .")

not to restrict unduly the ability of OMB to act, but to insure that in acting, OMB [does] have justification for what it does.

Third, decisions by OMB under this provision are not reviewable in court. Section 3504(h)(9) states that there shall be no judicial review of any OMB decision to approve or not act upon a proposed regulation; because the power to approve implies the power to disapprove, this paragraph in effect forbids court challenge of any decision to pursue any of the options open to OMB— approval, disapproval, or inaction. (Emphasis added.)[55]

Of particular significance in Congressman Horton's explanation of § 3504(h) is the distinction between OMB's authority to "review and comment" on portions of regulations specifically requiring the collection of information under § 3504(h), on the one hand, and OMB's authority to "approve or reject" information collection requests deriving from regulations, on the other hand. As Congressman Horton observed: "No matter what its action may have been in regard to a proposed regulation, OMB may freely approve or reject any specific collection request deriving from such a regulation."

This legislative history of § 3504(h) as amended strongly suggests that it was intended as the exclusive mechanism for OMB review of regulations containing information collection requirements. If this were not so, the provision's amendment by itself would not have been sufficient to assure that OMB would follow certain prescribed procedures when reviewing rules under the statute. It seems clear from the legislative record that the amendment's sponsor, Senator Kennedy, considered that the amendment of § 3504(h) would be sufficient to achieve this purpose.

Furthermore, the remarks of Senator Kennedy, Senator Danforth, and Congressman Horton—who provided the most extensive comments on the amended § 3504(h) in the legislative history—all draw a distinction between OMB review under § 3504(h) of information collection requirements *contained in* or specifically *required by* regulations, on the one hand, and OMB's approval or disapproval of information collection requests issued *pursuant to* or *deriving from* regulations, on the other hand. This distinction supports the notion that § 3504(h) was intended as the exclusive mechanism for OMB review and possible disapproval of aspects of regulations specifically imposing information burdens, as distinguished from OMB review of information collection requests issued under, pursuant to, or entirely apart from regulation.

Finally, this history strongly suggests that § 3504(h) and only § 3504(h)—*not* § 3507—sets forth the procedures governing regulations for purposes of this Act. It would be entirely inexplicable for Congress on the one hand to establish a detailed and specific process for OMB participation in developing new regulations based on a manifest concern with fairness, due process, and APA procedures, while on the other hand allowing existing and longstanding regulations

---

[55] 126 Cong. Rec. 31228 (1980)

to be swept aside or partially overturned without any of the same procedural safeguards. The amendment to § 3504(h) does not make sense if § 3507 could be used with respect to either "new" or "old" regulations.

(3) The language of § 3504(h) as enacted. Even though nothing in § 3504(h) specifically states that it provides the exclusive procedure for OMB review of collection of information requirements in rules, the provision's language, in our view, confirms that view. First, although the Act gives OMB broad powers of a general nature over federal information practices, § 3504(h) is the only provision in the statute explicitly establishing a process for OMB review and possible disapproval of collection of information requirements in rules. It would be anomalous for Congress to set forth such a detailed procedure and, at the same time, to permit OMB to follow an entirely different procedure under another provision, such as § 3507, without cross-referencing this possibility in § 3504(h). Although not dispositive, the principle of statutory construction, "expressio unius est exclusio alterius," has some application here. This principle may be translated as "the expression of one thing is the exclusion of another." Black's Law Dictionary 521 (5th ed. 1979). Under this maxim, when a statute or other legal instrument expressly includes certain things in one provision—such as the procedure in § 3504(h)—the drafters usually may be understood to have intended to exclude other things not expressly addressed—such as a parallel but markedly different procedure for OMB review of regulations under § 3507— from the coverage of that provision. *Id.* Although the maxim is by no means conclusive, such a result is normally presumed, absent affirmative contrary indication in a statute's language or legislative history.[56] The application of the maxim is more persuasive when the language of the statute, its legislative history, and other factors point to the same result.

Furthermore, § 3504(h) establishes a relatively detailed set of procedures for OMB review of portions of regulations containing collection of information requirements. These procedures would be rendered essentially superfluous if OMB could, at its option, review any given regulation under § 3507, which lacks the procedural requirements of § 3504(h). If this were possible, it is difficult to understand why Congress would have included § 3504(h) in the statute.

In addition, certain details of the language of § 3504(h) buttress the conclusion that it provides the exclusive procedural mechanism for OMB review of regulations expressly stated in the Act. Section 3504(h)(2) provides that within 60 days after a notice of proposed rulemaking is published in the Federal Register, the OMB Director "may file public comments *pursuant to the standards set forth in section 3508* on the collection of information requirement contained in the proposed rule" (emphasis added). The standards set forth in § 3508 are the ones applied by OMB before approving a proposed "information collection request,"

---

[56] *See, e.g., Morris v. Gressette,* 432 U.S. 491, 506 n 22 (1977); *Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 650 F 2d 342, 354–55 (D C Cir 1980), *cert. denied,* 452 U.S. 954 (1981), 2A, C Sands, Sutherland Statutory Construction § 47.25 (4th ed. 1973)

such as under § 3507.[57] If the drafters of § 3504(h) had intended that OMB could review regulations under § 3507, it would have been unnecessary for them to include in § 3504(h)(2) a specific reference to the standards contained in § 3508, for in that case, the standards set forth in § 3508 would have applied automatically.

It also is noteworthy that under § 3508, the OMB Director "may give the agency and other interested persons an opportunity to be heard or to submit statements in writing." Section 3508 also contains no requirement that OMB provide a public statement of its views. In contrast, § 3504(h)(2) authorizes the OMB Director only to file public comments about a collection of information requirement in a proposed rule. This contrast further indicates that the procedures of § 3504(h) are fundamentally distinguishable from those applying under other provisions of the Act, including §§ 3507 and 3508.

Also, § 3504(h)(5)(A) provides that nothing in § 3504(h) prevents the OMB Director, in his discretion, "from disapproving *any information collection request which was not specifically required by an agency rule*" (emphasis added). This subsection thus distinguishes between a collection of information requirement reviewed by OMB under § 3504(h), on the one hand, and OMB approval or disapproval of an "information collection request" that is not "specifically required" by an agency rule, on the other hand. As noted earlier, such a distinction supports the conclusion that § 3504(h) applies to collection of information requirements required by or contained in regulations, whereas other provisions of the Act, including § 3507, apply to an "information collection request" made pursuant to (or entirely apart from) a regulation.

## B. Other Provisions of the Act

The foregoing interpretation of § 3504(h), which in our view is most consistent with its language and legislative history, appears consistent with the statute's other major provisions, which we will discuss in numerical sequence.

(1) Section 3501: "Purpose." Section 3501 states in general terms the Act's basic purpose, which includes minimizing the federal paperwork burden and coordinating, integrating, and making more uniform federal information policies and practices. OMB argues that the Act's purpose would be undercut by an interpretation of the Act which construed § 3504(h) as the exclusive mechanism for OMB review of regulations containing collection of information requirements.

We have several difficulties with this argument. First, it is exceedingly general. Although the statement of the Act's purpose is quite broad and sweeping

---

[57] Section 3508 provides

> Before approving a proposed information collection request, the Director shall determine whether the collection of information by an agency is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility. *Before making a determination the Director may give the agency and other interested persons an opportunity to be heard or to submit statements in writing.* To the extent, if any, that the Director determines that the collection of information by an agency is unnecessary, for any reason, the agency may not engage in the collection of the information. (Emphasis added.)

and would support an expansive role for OMB, the broad purpose cannot serve to overcome the specific procedures in the Act itself. In fact, the Act has multiple aims, including that of providing in § 3504(h) for a set of procedures that will structure OMB's review of proposed regulations in a manner consistent with the public procedures governing rulemaking. That particular end must be respected along with the general purpose of reducing federal paperwork burdens and coordinating federal information practices.

Furthermore, it does not appear that an interpretation of § 3504(h) as providing the exclusive procedures for OMB's review of regulations would prevent OMB from effectively discharging its duties of reducing federal paperwork burdens. First, OMB retains full authority under § 3507 to review all forms, questionnaires, and similar information collection requests issued pursuant to rules without having to follow the procedures set forth in § 3504(h). Second, under § 3504(h) itself, OMB ultimately can disapprove a collection of information requirement in certain circumstances.[58] Third, as noted above, OMB is given additional, general authorities under other provisions of the Act, including the other subsections of § 3504, to initiate and review proposals for changes in regulations and agency procedures in order to improve government information practices.

OMB's primary concern may be that Treasury's interpretation of § 3504(h) as the exclusive set of procedures for OMB review of regulations effectively would mean that OMB cannot review regulations such as those promulgated by the IRS that were already in existence when the Act became effective. This would be the case because § 3504(h) rather clearly applies only to rules proposed and promulgated after the Act became effective.[59] If § 3504(h) is the only provision specifying procedures for OMB review of regulations, it follows that the Act does not establish an express procedural mechanism for OMB review and potential disapproval of regulations already in existence when the Act became effective.

OMB objects to an interpretation leading to such a "gap" in the Act's coverage. However, to the extent that this is a "gap" in coverage, it is not inconsistent with legislative history. As noted above, the Act's legislative history supports the proposition that Congess believed that "new" regulations caused the greatest paperwork burdens.[60] For that reason, it is neither surprising nor anomalous for Congress to have concentrated on fashioning a specific procedure for OMB review of regulations proposed and promulgated after the Act's effective date. If, on the other hand, Congress has intended to reopen existing regulations—or at

---

[58] *See* §§ 3504(h)(5)(B), (C) and (D)

[59] This is so because § 3504(h) only deals with rules once they are "proposed " "This subsection shall apply only when an agency publishes a notice of proposed rulemaking and requests public comments " § 3504(h)(8) Furthermore, there would be no practical way for § 3504(h) to apply retroactively to rules already promulgated in final form when the Act became effective That would require submitting all existing rules that impose paperwork requirements to a new notice and comment process. This is simply not contemplated by § 3504(h). Thus, we agree with OMB that § 3504(h) establishes a set of procedures that applies only to rules proposed and promulgated after the Act's effective date

[60] *See* S. Rep. No. 930, 96th Cong , 2d Sess. 8–9 (1980). In the passage from the Senate Committee report quoted above, it is stated that the bill's emphasis on OMB oversight of the *development* of regulations "has great promise for minimizing the explosion of paperwork demands on the public because *new* regulations are causing the greatest growth in information requirements" (emphasis added).

least those that contained some reporting or recordkeeping requirements—with the attendant uncertainty that that would cause regarding the legal status of those regulations during the process contemplated by the Act, we would have expected to find express legislative history on the subject.

Moreover, OMB does have the authority under § 3504(b)(2) to initiate and review proposals for changes in regulations and to develop some orderly process for such an examination. OMB simply may not employ with respect to existing regulations the procedures, including the disapproval mechanisms, contained in § 3504(h) or § 3507.

Finally, we must bear in mind the late Judge Jerome Frank's admonition: "The legislative process is inherently such that, on occasions, the applications of a statute in practice disclose inconsistencies. While the literal meaning of a statute must yield to its evident purpose or policy, where a statutory provision accords with that purpose, the courts should seldom enlarge that provision, in the interest of symmetry or uniformity, in order to supply an omission."[61] In this case, the literal terms of § 3504(h)—which apply to regulations proposed and promulgated after the Act's effective date—are in accord with the provision's stated purpose of addressing the major increases in the federal paperwork burden deriving from new regulations. In such a situation, it would be inappropriate to "supply an omission" in § 3504(h) in "the interest of symmetry or uniformity" by reading this or another provision as applying to regulations that were already proposed and promulgated at the time the Act became effective.[62] Such a reading also would conflict with the customary canon of statutory construction that, unless there is clear indication to the contrary, a statute should be read as applying prospectively to conditions or events occurring after the statute becomes effective.[63]

Accordingly, it does not appear that the Act's general purpose would be undermined or violated by an interpretation of § 3504(h) as the only provision setting forth procedures for OMB review of regulations under the Act.

(2) Section 3502: "Definitions." One of the Act's critical definitions is that of an "information collection request," which includes, in addition to a "written report form," "application form," "schedule," and "questionnaire," a "reporting or recordkeeping requirement . . . calling for the collection of information."[64] There can be little doubt that, on its face, this definition could be read to apply to portions of regulations imposing reporting or recordkeeping requirements. The question is whether it must or should be read in such a manner.

Although we acknowledge the breadth of the definition of an "information collection request," we do not believe that it must be read to cover portions of

---

[61] *Guiseppi v. Walling*, 144 F.2d 608, 614 (2d Cir. 1944). *See also Addison v Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 617 (1944) ("Legislation introducing a new system is at best empirical, and not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation But it is no warrant for extending a statute that experience may disclose that it should have been made more comprehensive").

[62] Again, we note that forms issued pursuant to regulations may well be subject to § 3507 Also, if regulations were to be newly proposed or revised, the rulemaking proceedings would also be subject to § 3504(h)

[63] *See generally* 2A, C. Sands, Sutherland Statutory Construction, ch. 41 (4th ed 1973). *See also* note 93 *infra*.

[64] Section 3502(11)

regulations imposing paperwork burdens. This conclusion rests in part on the fact that the actual method by which information is collected would be embraced by § 3507 in a manner which could not conveniently cover existing regulations, and on the fact that § 3504(h), the Act's only provision setting forth specific procedures for OMB review of regulations, speaks not of an "information collection request" but rather of "collection of information requirements" contained in regulations. Even though it might be possible to view this difference in terminology as highly technical and merely the result of inadvertence, it is more in accord with the canon of construction of giving effect to every word, clause, and sentence in a statute[65] to take seriously the difference in terms used by Congress.

Congress spoke about an "information collection request" as being subject, *inter alia*, to § 3507 on the one hand, and about "collection of information requirements" in regulations as being subject to § 3504(h) on the other hand. If Congress had sought to make information burdens imposed by regulations subject to § 3507, it could have so provided in § 3507, either directly or by means of a cross-reference in that section to the provisions in § 3504(h) governing review of collection of information requirements in regulations. That Congress not only did not do so but also used a different, albeit quite similar, term in speaking about regulations strengthens the conclusion that Congress intended collection of information requirements in regulations to be subject to the procedures of § 3504(h) alone.

Furthermore, we do not believe that the Act's definition of an "information collection request" should be read as necessarily including "collection of information requirements" contained in regulations.[66] To do so would, in our view, undermine the intended function of § 3504(h), which was to provide a specific set of procedures to structure OMB review and potential disapproval of collection of information requirements in proposed regulations. If regulations also could be reviewed under § 3507—a provision that lacks the procedures of § 3504(h)— there would be no apparent purpose for including § 3504(h) in the statute.

Moreover, a construction of the term "information collection request" as applying to the portion of a regulation that imposes a collection of information requirement would appear inconsistent with the major discussion of the definition of an information collection request in the Senate Committee report. That report explains:

> The term 'information collection request' refers to *the actual instrument used for a collection of information*. It is the informa-

---

[65] *See* 2A, C. Sands, Sutherland Statutory Construction § 46 06 (4th ed 1973)

[66] We note that the term "collection of information requirement" is not defined in the Act, although a "collection of information" is defined in § 3502(4) as.

. . the obtaining or soliciting of facts or opinions by an agency through the use of written report forms, application forms, schedules, questionnaires, reporting or recordkeeping requirements, or other similar methods calling for either—

(A) answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States, or

(B) answers to questions posed to agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes . .

tion collection request which must be submitted to the Director in accordance with the clearance requirements of Section 3507. (Emphasis added.)[67]

The phrase, "actual instrument used for a collection of information," is not defined in the statute and thus is to be interpreted in light of its ordinary meaning. An "instrument" is generally understood as the means by which, the tool or device by which, something is to be accomplished—that is, in this context, the form or questionnaire or schedule on which information is supplied or submitted.[68] In contrast, a "regulation" is defined as "an authoritative rule or principle," or "a rule . . . having the force of law issued by an executive authority of a government."[69] Accordingly, we believe that the term "actual instrument" refers to the form or some similar reporting or recordkeeping instrument pursuant to which information is transmitted by the citizen to the government, and not the portion of a regulation imposing the information requirement itself. It would appear to strain common usage to assert that such a portion of a regulation is itself an "actual instrument" for the collection of information. Such usage is not strained by speaking of a form issued pursuant to a regulation as an "actual instrument" for the collection of information.

Accordingly, we conclude that the term "information collection request" need not and should not be construed as synonymous with the term "collection of information requirement" in § 3504(h). In our view, the Act's requirements applying to an "information collection request"—including those in § 3507—do not apply as a definitional matter to a "collection of information requirement" in a regulation.

(3) Section 3507: "Public information collection activities—submission to Director; approval and delegation." Section 3507 requires agencies to obtain OMB approval of a proposed "information collection request" before conducting or sponsoring the collection of information.[70] Having discussed the definition of an "information collection request," we must now consider whether the language of § 3507 is consistent with an interpretation of § 3504(h) as providing the only express set of procedures for OMB review of rules under the Act. We believe that it is.

First, § 3507(a)(2)(A) requires an agency, before making an information collection request, to submit to OMB "the proposed *information collection request, copies of pertinent regulations* and other related materials as the Director may specify . . ." (emphasis added). It seems noteworthy that the reference here to "pertinent regulations" is separated by a comma from the reference to an "information collection request." This separation is consistent with the view that

[67] S Rep No 930, 96th Cong., 2d Sess. 39 (1980).

[68] *See* Webster's Third New International Dictionary 1172 (1976).

[69] *Id* at 1913; *see also* Black's Law Dictionary 1156 (5th ed. 1979) (defining a regulation as "a regulatory principle" or a "precept" or "rule .   prescribed for management or government").

[70] *See also* § 3504(c) (providing that the information collection request clearance and other paperwork control functions of the OMB Director "shall include .   reviewing and approving information collection requests proposed by agencies" and "ensuring that all information collection requests       are inventoried, display a control number and, when appropriate, an expiration date").

portions of regulations which impose paperwork burdens are not themselves information collection requests for purposes of § 3507. If a portion of a regulation imposing a paperwork burden were an information collection request, the list in § 3507(a)(2)(A) of items to be submitted to OMB would appear redundant, for the same item—that is, part of a regulation imposing a paperwork burden—would be referenced twice, once as an "information collection request" and once as a "pertinent regulation."[71] We believe that the reference to "pertinent regulations" means that OMB, in evaluating an information collection request under the criteria specified in the Act, should be furnished all material, including in particular regulations in light of which a form itself must be assessed.

Second, § 3507(b) directs OMB, within 60 days of the receipt of a proposed information collection request, to notify the agency concerned of its decision "to approve or disapprove the request." OMB's decision is to be made "publicly available," but is not required to be published or to be accompanied by a statement of reasons. *Id.* This procedure is sharply distinguishable from that provided for by § 3504(h). Section 3504(h) requires OMB to file public comments on a proposed collection of information requirement in an agency rule (§ 3504(h)(2)), and to make publicly available its reasons for any disapproval of such a requirement (§ 3504(h)(6)). In view of these differences and the canon of construction that statutes should be read to give effect to each provision in them,[72] the most natural reading of § 3507(b) is that it must apply in different situations than does § 3504(h). If this were not the case, then as a practical matter the less formal procedures of § 3507 could be expected to supplant the more formal procedures of § 3504(h).

Third, in our view § 3507(c) does tend to confirm that OMB is not to assign control numbers to regulations reviewed under § 3504(h). Section 3507(c) provides in pertinent part:

> *Any disapproval by the Director, in whole or in part, of a proposed information collection request of an independent regulatory agency, or an exercise of authority under section 3504(h) or 3509 concerning such an agency, may be voided,* if the agency by a majority vote of its members overrides the Director's disapproval or exercise of authority. . . . *Where the override concerns an information collection request, the Director shall without further delay assign a control number to such a request,* and such override shall be valid for a period of three years. (Emphasis added.)

---

[71] It could be argued that the reference to "pertinent regulations" should be read as referring to regulations *other than* the one containing a particular information collection request This gloss on the statute, however, finds no specific support in the language of § 3507(a)(2)(A). In any event, if Congress intended that portions of regulations could themselves be information collection requests, it chose a most indirect and awkward way of phrasing its intent when it directed an agency to submit to OMB "the *proposed information collection request, copies of pertinent regulations* and other related materials as the Director may specify, . " (emphasis added)

[72] Statutory construction must start with the language of the statute concerned *See, e g , Detroit Trust Co* v *The Thomas Barlum,* 293 U S 21, 38 (1934) (a court is not "at liberty to imply a condition which is opposed to the explicit terms of the statute. . . To [so] hold . . . is not to construe the Act but to amend it."), *Fedorenko* v *United States,* 449 U.S. 490, 513 (1981)

The commas after "agency" at two places in the first sentence of § 3507(c)—which deals with any disapproval "of a proposed information collection request of an independent regulatory agency, or an exercise of authority under section 3504(h) or 3509 concerning such an agency, may be voided . . ."—serve to distinguish between OMB disapprovals of an information collection request, on the one hand, and actions under §§ 3504(h) and 3509, on the other hand.[73] The last sentence of § 3507(c) provides that where "the override concerns an information collection request," OMB shall without further delay assign a control number to such a request. The absence in the last sentence of any reference to § 3504(h) or § 3509 suggests that OMB is not to assign control numbers under those provisions. If it were otherwise, one would expect Congress to have included some reference to § 3504(h) in the last sentence of § 3507(c).

This analysis of the language of § 3507(c) supports the notion that the Act should be read as providing for two different sets of procedures for OMB review: those in §§ 3504(c) and 3507 (including the assignment of control numbers), which apply to information collection requests (forms, questionnaires and the like), and those in § 3504(h) (not including the assignment of control numbers), which apply to collection of information requirements in regulations. That interpretation of § 3507(c) is sustained by a passage in the Senate Committee report, which distinguishes between an independent agency's override of an OMB disapproval of an "information collection request" and its override of an exercise of authority under § 3504(h) "concerning rules and regulations":

> An independent regulatory agency may be [sic] a majority vote of its members *override any disapproval* of the Director *of an information collection request. The override authority also applies to an exercise of the Director's authority under section 3504(h) (concerning rules and regulations)* and under section 3509 (designation of a central collection agency). (Emphasis added.)[74]

If the term "information collection request" included an information requirement in a regulation, there would have been no reason to add to the statement that an independent agency may override an OMB disapproval of an information collection request the statement that the override authority "also" applies to OMB action relative to "rules and regulations" under § 3504(h).

Fourth, § 3507(d) provides that the OMB Director "may not approve an information collection request for a period in excess of three years." If this provision applied to portions of regulations containing collection of information requirements, the result would be that at least those portions of regulations containing collection of information requirements could be effective for no more than three years without subsequent OMB approval. Such an arrangement would have major effects on the administrative process that has been in existence at least

---

[73] Under § 3509, the OMB Director "may designate a central collection agency to obtain information for two or more agencies if the Director determines that the needs of such agencies for information will be adequately served by a single collection agency, and such sharing of data is not inconsistent with any applicable law "

[74] S  Rep. No. 930, 96th Cong., 2d Sess  15 (1980).

since the enactment of the Administrative Procedure Act in 1946. In effect, such an arrangement would involve the operation of a kind of "sunset" provision for agency regulations, under which regulatory provisions would automatically lapse after a certain time unless affirmative steps were taken to renew a regulation.

Without expressing any view regarding the merits of such a provision or its legality if it were enacted by Congress, we must approach with a sense of caution an interpretation of the Act that would require such a far-reaching result in the absence of any clear expression by Congress that this was its intent. We have not been referred to, nor have we found, any provision or statement indicating specifically that Congress sought, in passing the Act, to subject agency regulations to such a "sunset"-type provision. This is of special significance because a wide class of "sunset" provisions, usually involving a lapse of statutory authority after a certain number of years absent affirmative re-authorization by Congress, has been the subject of the contemporary debate about "regulatory reform."[75] The Act's legislative history specifically and clearly states that Congress did not intend for the statute to be used as a vehicle for "regulatory reform" in any broad sense.[76] These factors, taken together, support the view that § 3507(d) should not be read as applying to portions of regulations which contain collection of information requirements.

In short, we believe that the language of § 3507 is consistent with the interpretation of § 3504(h) as providing the only set of procedures for OMB review of regulations under the Act.

(4) Section 3512: "Public Protection." Section 3512 provides that "no person shall be subject to any penalty for failing to maintain or provide information to any agency" pursuant to an information collection request made after December 31, 1981, if the request does not "display a current control number assigned by the Director [of OMB], or fails to state that such request is not subject to this chapter." The purpose of this provision is to provide an effective incentive for agencies to comply with the Act's requirement that a control number be displayed on each "information collection request."[77] The question here is whether § 3512 was intended to apply in the context of regulations containing collection of information requirements.

Although the legislative history is not necessarily conclusive on this point, it does suggest that § 3512 was intended to apply to forms, questionnaires, or similar methods of collecting information, not to regulations as such. For instance, in the report of the House Committee on Government Operations, the following explanation of § 3512 is provided:

---

[75] See. e g . Federal Regulation: Roads to Reform, Final Report of the American Bar Association's Commission on Law and the Economy, 105–111 (1979).

[76] See H R Rep. No 835, 96th Cong., 2d Sess. 9 (1980) ("Regulatory reform is a separate issue from the function assigned by H.R. 6410. . . . [T]he assignment of regulatory reform to the Office of Federal Information Policy would dilute the information functions assigned under this bill"), S. Rep. No. 930, 96th Cong . 2d Sess 8–9 (1980) ("[T]he Committee does not intend that 'regulatory reform' issues which go beyond the scope of information management and burden be assigned to the Office by the Director")

[77] See H R Rep. No 835, 96th Cong , 2d Sess 20 (1980), S Rep No 930, 96th Cong , 2d Sess. 2, 52 (1980)

[T]he bill stipulates that no penalty may be imposed on a person who fails to respond to an information collection request which was not approved in accordance with the law's provisions. . . . *H.R. 6410 would allow the public, by refusing to answer these questionnaires, to help control "outlaw forms"* (emphasis added).[78]

Similarly, Senator Chiles, a sponsor of the Senate bill, stated during hearings before his subcommittee in 1979 that "*[f]orms without an OMB number on them will be 'bootleg forms'* that the public can ignore." (Emphasis added.)[79] During the same hearing, Senator Bellmon explained: "Under S. 1411 [a] businessman, *when he gets all these forms, unless they have that OMB stamp in the upper right-hand corner,* that stamp of approval, he will know that *that is a bootleg form* that he can throw away" (emphasis added).[80]

Although other statements in the legislative history refer more generally to § 3512's coverage of "information collection requests,"[81] the emphasis on "bootleg forms" in much of the legislative record strongly suggests that Congress particularly had in mind § 3512's application to forms and similar methods of collecting information. Although this fact alone does not necessarily establish that only forms and similar items—as distinct from regulations—are subject to the control number requirements of §§ 3507 and 3512, it is entirely consistent with such an interpretation of the Act.

(5) Section 3518: "Effect on existing laws and regulations." Section 3518(e) provides that "[n]othing in this chapter shall be interpreted as increasing or decreasing the authority of the President, the Office of Management and Budget or the Director thereof, under the laws of the United States, with respect to the substantive policies and programs of departments, agencies and offices . . . ."[82] This provision evidently distinguishes between the "substantive policies and programs of departments, agencies and offices," which are not to be affected by the Act, and the procedural requirements governing paperwork imposed by the Act. We grant that this distinction may be a difficult one to maintain in practice. Nonetheless, Congress required that it be maintained. This fact casts doubt on an interpretation of the Act that would effectively shift, without any clearly expressed intent to do so, a measure of substantive control over rulemaking from an agency to OMB.[83]

---

[78] H.R. Rep. No 835, 96th Cong., 2d Sess. 20 (1980)

[79] *Paperwork and Redtape Reduction Act of 1979. Hearings before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm on Governmental Affairs.* 96th Cong , 1st Sess. 7 (1979) (remarks of Sen. Chiles).

[80] *Id.* at 12

[81] *See, e g* , S. Rep No. 930, 96th Cong., 2d Sess 52 (1980). "*Information collection requests* which do not display a current control number or, if not, indicate why not, are to be considered '*bootleg*' *requests* and may be ignored by the public " (Emphasis added )

[82] Section 3518(a) states that "[e]xcept as otherwise provided in this chapter, the authority of an agency under any other law to prescribe policies, rules, regulations, and procedures for Federal information activities is subject to the authority conferred on the Director by this chapter" Although this provision confirms that the Act applies to regulations, it does not provide guidance regarding the question whether § 3504(h) sets forth the only procedures for OMB review of regulations under the Act.

[83] *See* 126 Cong. Rec. 30178 (1980) ("Section 3518 specifically states that this bill does not change existing relations of the President and OMB with respect to the substance of agency programs.") (Remarks of Sen Chiles.)

As noted earlier, one of the chief consequences of OMB's interpretation is that portions of regulations imposing paperwork burdens would be "approved" by OMB for no more than three years. After expiration of the approval period, they would lapse and require new approval to remain effective. This would arguably give OMB a much greater measure of control over the rulemaking process. Although by itself this point is not particularly definitive, it certainly is not inconsistent with the view set forth above that § 3504(h) provides the exclusive set of procedures for OMB review of regulations under the Act.

## C. General Scheme of the Act

We have concluded that an interpretation of § 3504(h) as providing the only express procedures for OMB review and disapproval of informational portions of regulations, as stated in A above, appears consistent with each of the Act's major provisions in addition to § 3504(h). We believe that such an interpretation also is consistent with the statute's general scheme.

One general argument against such an interpretation that is implicit in OMB's position rests on the fact that the foregoing interpretation would divide the world of paperwork burdens into basically two categories—those imposed by regulations and those imposed by forms or similar documents—and would control each category with a different set of OMB review procedures. This division, it might be contended, seems at odds with the Act's general aim of reducing all federal paperwork burdens, not just those imposed by forms, questionnaires or similar methods of information collection.

A significant weakness of this argument, however, is that it essentially assumes its own conclusion, namely, that the Act does not distinguish for purposes of OMB review between paperwork burdens imposed by regulations and such burdens imposed by forms of questionnaires. That, of course, is the central question to be resolved here.

In addition, this argument presumes that the practical effect of an interpretation of § 3504(h) as providing the only express procedures for OMB review of regulations would be substantially to undermine OMB's efforts to reduce the federal paperwork burden. However, as an empirical matter, it has not been demonstrated that such an interpretation of § 3504(h) would so constrict OMB's effectiveness under the Act. OMB is given broad general powers under § 3504(b). Also, § 3504(h) itself authorizes OMB ultimately to disapprove collection of information requirements contained in proposed regulations enacted after the effective date of the Act.[84] Moreover, there is no dispute that forms or questionnaires issued pursuant to regulations are subject to OMB review under § 3507.

Furthermore, this argument fails to take account of a number of passages in the legislative history indicating generally that Congress was especially concerned with the paperwork burden imposed by agency forms, questionnaires, or similar

---

[84] See § 3504(h)(5).

items. This is not to say that Congress was not also concerned with regulations, as it clearly was. However, Congress was particularly concerned about forms. This emphasis is reflected at several points in the legislative history.

For instance, the House Committee report described the Act as strengthening the Federal Reports Act of 1942 by requiring OMB "to review and approve most of *the forms and questionnaires* used by the Federal agencies to collect information from the public." (Emphasis added.)[85] In another passage, the House report described the basic problem addressed by the Act as follows: "Inefficiencies in current Federal information practice drastically reduce the effectiveness of the Government while, at the same time, *drowning our citizens in a sea of forms, questionnaires, and reports.*" (Emphasis added.)[86]

In a similar vein, the Senate Committee report stated:

> *Federal paperwork requirements, whether they are tax forms, medicare forms, financial loans, job applications, or compliance reports, are something each individual touches, feels, and works on.* The cumulative impact is excessive. . . .
>
> Several small business counselors testified that many clients refuse to expand their business because of the added paperwork they would face. *One counselor taped together the forms any potential small business person must know just to think about getting into business. They stretched across an entire room.* (Emphasis added.)[87]

Such references to "something each individual touches, feels, and works on" and taped-together forms stretching across an entire room are vivid reminders that Congress sought, by passing the Act, particularly to control the paperwork burden imposed by forms, questionnaires, and similar instruments for information collection.

The emphasis on forms also is reflected in testimony during hearings on the relevant bills. Of particular interest is the explanation by the former Associate Director of OMB of the elimination of the exemption for the IRS that had been contained in the Federal Reports Act:

> *The arguments that were made on behalf of IRS were basically that new tax forms have to be prepared within extremely short time limits.* The delays would be extremely important and costly to taxpayers.
>
> *They also raised the argument that the tax form is extremely complex and technical and there was not very much that you could do to improve the forms as a result*[,] and the third argument . . . is that the collection of revenue is a unique function and unlike

[85] H.R. Rep No 835, 96th Cong , 2d Sess. 18 (1980).
[86] *Id.* at 3
[87] S Rep. No. 930, 96th Cong , 2d Sess. 3 (1980).

anything else the Federal Government does and, therefore, nobody outside that function should have a role in deciding what information goes in it.

We viewed those arguments as not persuasive. (Emphasis added.)[88]

At another point in this testimony, the OMB representative further highlighted the underlying importance of the IRS' forms:

From the beginning, OMB's ability to control reporting burdens has been limited from exemptions to the Federal Reports Act. *All of the forms of the Internal Revenue Service* and most of the reports of the bank regulatory agencies *have not been reviewed by any unit outside that agency . . . . Because of these provisions, almost three-quarters of the public reporting burden is excluded from OMB review.* (Emphasis added.)[89]

These and other statements in the legislative history[90] confirm that Congress' attention was drawn particularly to the problem of controlling the paperwork burden imposed by government forms, questionnaires, and similar items. This special concern is consistent with our conclusion that Congress set forth a particularly rigorous mechanism for OMB review of forms under the Act. This does not deny that Congress also was concerned with regulations. However, the many passages indicating Congress' special concern with forms does establish that Congress did not always consider forms and regulations together and inseparably. Thus, it is not surprising that the Act sets forth two different procedural mechanisms for the review of forms and regulations, respectively.

We conclude that the Act's general scheme, as reflected in its legislative history as well as language, is consistent with the view that § 3504(h) provides the only procedures for OMB review of regulations.

[88] *Paperwork and Redtape Reduction Act of 1979, Hearings before the Subcommittee on Federal Spending Practices and Open Government of the Senate Committee on Governmental Affairs,* 96th Cong , 1st Sess. 31–32 (1979) (testimony of Wayne Granquist, Associate Director, OMB)

[89] *Id.* at 25

[90] *See Paperwork Reduction Act of 1980, Hearings before a Subcommittee of the House Committee on Government Operations,* 96th Cong., 2d Sess 2 (1980) ("While the Government needs a great deal of information from its citizens, a lot can be done to cut down on the number and length of *questionnaires, forms and reports,* and to eliminate duplication and inefficiencies") (emphasis added) (statement of Chairman Brooks), *id* at 89 ("Currently almost 81 percent of the Federal paperwork burden is exempt from OMB review Without the authority to review the *reports and forms* required by the independent regulatory commissions and associated with tax, education and health manpower programs, there is little we can do to reduce the public burden imposed by these requirements") (emphasis added) (statement of Wayne Granquist, Associate Director, OMB). *See also Paperwork and Redtape Reduction Act of 1979, Hearings before the Subcommittee on Federal Spending Practices and Open Government of the Senate Committee on Governmental Affairs,* 96th Cong , 1st Sess. 11 (1979) ("Past attempts to arrest the proliferation of paperwork have included requirements for Office of Management and Budget and GAO approval of *reporting forms.* Obviously, this has not been effective in holding down reporting requirements Each and every Federal agency seems to continue to be able to argue that they have unique needs which can only be met by creating their own new forms") (emphasis added) (statement of Senator Bellmon), *Privacy and Confidentiality Report and Final Recommendations of the Commission on Federal Paperwork, Hearings before Subcommittee of the House Committee on Government Operations,* 95th Cong., 1st Sess. 7 (1977) ("We recommended the elimination of all agency exemptions from the requirement for a central review of all planned reports the government uses to collect information from the public. Currently, the IRS with its multitude of *tax forms,* as well as the bank regulatory agencies and others are not subject to review by a central management agency such as OMB .      to reduce duplication or unnecessary data collections") (emphasis added) (statement of Chairman Horton)

419

## IV. Response to Arguments in the OMB Memorandum of April 23, 1982

In this section, we address certain particular aspects of the memorandum of April 23, 1982, setting forth OMB's position. That memorandum clarified some of the issues about which OMB and Treasury are in disagreement and forcefully stated the arguments in favor of OMB's view. Some of the arguments contained in that memorandum already have been addressed in this opinion. This section will briefly respond to the remaining issues and seek to dispel any confusion about some of the more important details presented by this dispute.

### A. The Question to Be Resolved

At the outset, it is important to recognize that, in our view, the central question we must address is *not* the coverage of regulations by the Act as such. We stress this because the April 23, 1982, memorandum suggests that that is the basic question. For example, on pages 1 and 2, in discussing the Senate amendment to § 3504(h), the memorandum states that "[t]he [Kennedy] Amendment neither brought new 'information collection requirements' within the Director's approval responsibilities nor exempted 'information collection requests' already covered by the Act. *This is the issue* . . ." (emphasis added). In fact, there is no doubt that regulations are "covered" by the Act. They would have been "covered" without the Kennedy amendment and they are covered by the version of the Act actually passed. The question is to what extent and in what manner regulations are covered by the Act.

### B. The Procedures Governing OMB Review of Regulations

It should be recalled, as discussed above, that the Act gives OMB broad powers to review and initiate proposals for changes in regulations wholly apart from the collection of information clearance procedures which are the central focus of the dispute between Treasury and OMB. OMB has the authority conferred on it by § 3504(b), including "initiating and reviewing proposals for changes in . . . regulations" (§ 3504(b)(2)), and "coordinating, through the review of budget proposals . . . agency information practices" (§ 3504(b)(3)). We discuss here only the specific interrelationship between the explicit and distinct procedures established by § 3504(h) on the one hand, and §§ 3504(c) and 3507 on the other hand.

Before considering in detail the April 23, 1982, memorandum's discussion of the procedures governing OMB's review of regulations, we will set forth in a somewhat schematic manner the four major possibilities in this regard. First, it could be argued that only the procedures set forth in §§ 3504(c) and 3507 could apply to regulations. Second, it might be asserted that only the procedures set forth in § 3504(h) could apply to regulations. Third, it is possible that both sets of procedures—those in § 3504(h) *and* those in §§ 3504(c) and 3507—could apply in any particular case to regulations. Fourth, it is possible that each set of

procedures could apply to regulations, but only in mutually exclusive sets of circumstances.

The first alternative has no support and contradicts the explicit terms of § 3504(h). The April 23, 1982, memorandum squarely rejects the second possibility, which is the one embraced by the Treasury Department and is most reasonable in our view. Thus, the OMB memorandum could have adopted the third or the fourth alternative. In fact, it would appear that the memorandum, at different points, embraces both possibilities.

For instance, at pages 16 and 17, the memorandum asserts that an agency has a "degree of latitude" in deciding whether to have a regulation that imposes a paperwork burden reviewed by OMB under § 3504(h), or under §§ 3504(c) and 3507:

> *[A]s a practical matter, the Kennedy amendment* [§ 3504(h)] *accords each agency a degree of latitude with regard to the procedures by which the Director [of OMB] will review information collection requests in regulations* which are the subject of notice and comment procedures. If the agency wants OMB to proceed under 3504(h), it submits the NPRM [notice of proposed rulemaking] and related material in accordance with the procedures of section 3504(h). OMB will then process the request according to 3504(h). *If the agency wants OMB to process the request pursuant to the procedures of 3504(c) and 3507, nothing in the law would prevent it from completing its rulemaking and then submitting the rule containing the request to OMB for review.* (Emphasis added.)

However, the OMB memorandum states that this latter process "would run the very risk that the Kennedy amendment was designed to minimize, and should be avoided." Thus, the OMB memorandum acknowledges that its interpretation of the statute allows for the very problem which § 3504(h) was enacted to prevent. Moreover, OMB practice may have initially insisted upon it, as the memorandum indicates at page 17:

> The Memorandum submitted by Eric Fygi [Deputy General Counsel, Department of Energy] contends that OMB operates as though it has the power to decide which procedures apply. OMB does not have that authority, although it may well be that during the early months of implementation, it has at times operated as though it did. OMB has taken steps to ensure that the agencies and not OMB make the "choice" and our new procedures . . . will unambiguously so provide.

This passage evidently assumes that it is now up to an agency to decide in any particular case whether to have a regulation reviewed by OMB under § 3504(h) *or* under §§ 3504(c) and 3507.

On the other hand, at pages 11 and 12, the April 23, 1982, memorandum explains the Senate's amendment to § 3504(h) as an attempt to "harmonize" the Act's procedures with the Administrative Procedure Act (APA) in order to "accommodate . . . two potentially conflicting responsibilities." To accommodate this potential conflict, the memorandum suggests, § 3504(h) applies to regulations during the period in which they are subject to notice-and-comment procedures under the APA, whereas §§ 3504(c) and 3507 apply to regulations imposing information requirements in other circumstances. This is also the position taken in the memorandum to us dated January 15, 1982, discussed above.[91] Under this view, "[i]f 3504(h) does not apply, then the procedures of 3504(c) and 3507 do . . ." (page 12). A key premise of this interpretation evidently is that both sets of procedures do not apply to any given regulation at the same time. The provisions, in short, are mutually exclusive on this view.

Accordingly, the April 23, 1982, memorandum appears to embrace two different and evidently inconsistent positions: first, that in a particular case, both § 3504(h) *and* §§ 3504(c) and 3507 may apply to a regulation (the third possibility above) and the choice is up to the agency; and second, that in any particular case, either § 3504(h) or §§ 3504(c) and 3507 (but not both) may apply to a given regulation (the fourth possibility above). We responded to the third possibility in section III, where we noted that under such an interpretation, § 3504(h) would be rendered relatively redundant. This is so, in sum, because the purpose of § 3504(h) was to establish a procedural system under which OMB would review regulations under the Act. If it were possible for OMB to review regulations under other provisions—including §§ 3504(c) and 3507—which lack the procedural formalities of § 3504(h), there would be no definite function left for § 3504(h) to fulfill.[92] We also note that the optional character of this interpretation flies in the face of the mandatory language of § 3504(h) ("each agency shall forward").

The fourth possibility also is subject to the response that it ignores the exclusive role assigned to § 3504(h) under the statute. The fourth possibility adds the significantly anomalous result that "new regulations proposed after the Act's effective date are subject to § 3504(h), with the procedural checks it was intended to provide, whereas "old" or "existing" regulations promulgated before the Act's effective date are subject to §§ 3504(c) and 3507 and could be overturned without any of the procedural safeguards of § 3504(h). Our concern with this interpretation is heightened by the fact that it does not give any weight to the longstanding canon of interpretation that statutory provisions should normally be read as applying prospectively to events and conditions occurring after the law's effective date: "[t]he rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction."[93] The language of

[91] *See* note 41 *supra* and accompanying text.

[92] Elaborations on this argument appear *supra*.

[93] This canon is stated in *Bauer Grocer Co.* v. *Zelle*, 172 Ill. 407, 50 N E. 238, 241 (1898); *see also* 1 Kent, *Commentaries* 454 (3d ed. 1836); Smead, *Rule Against Retroactive Legislation*, 20 Minn. L. Rev. 775 (1936); *Brewster* v. *Gage*, 280 U.S. 327 (1930), 2A, C. Sands, Sutherland Statutory Construction § 41.04 (4th ed. 1973).

§§ 3504(c) and 3507 does not clearly express the intention that it should be applied to regulations already promulgated at the time the Act became effective.

## C. Additional Points

Several additional comments may be made regarding the April 23, 1982, memorandum.

(1) Page 2 of the memorandum relies on a passage in the Senate Committee report stating that the "imposition of a federal paperwork burden does not depend on how the questions are asked of the respondent, but rather on the fact the Federal government has asked or sponsored the asking of questions." This is said to support the proposition that such requests could be made by regulations as easily as by forms, questionnaires, or similar items.

We discern little guidance in this passage. It does not discuss regulations at all, but rather is directed at explaining that the phrase, "or other similar methods," in the definition of a "collection of information" covers oral as well as written requests. The passage's meaning may be best understood by considering it as a whole:

> [T]he Director of OMB has historically included oral techniques as instruments for collecting information. Federal agencies have increasingly been collecting information from the public through the use of telephone surveys and personal interviews. These techniques are used either independently or in conjunction with other information collection techniques such as mail question-naires. The imposition of a federal paperwork burden does not depend on how the questions are asked of the respondent, but rather on the fact the Federal government has asked or sponsored the asking of questions. In concept, oral data collections are the same as those conducted through written requests for written responses. They should be reviewed under the same standards as written requests.[94]

It appears to be an unduly strained reading of the foregoing passage to view it as supporting more than the proposition it advances, namely, that oral as well as written requests are covered by the Act's definition of the "collection of information."

(2) At page 2, the memorandum argues that the Kennedy amendment was "clearly premised on the understanding that all reporting and recordkeeping requirements contained in regulations were required to be routinely approved by the Director" of OMB. In support of this argument, comments by Senators Kennedy and Danforth during Senate debate on the bill are quoted at page 3 of the memorandum.

---

[94] S. Rep. No 930. 96th Cong . 2d Sess 39 (1980)

In our view, the quoted comments do not support the proposition advanced. The Senators' comments deal with the procedural requirements under § 3504(h) governing OMB review of regulations during the process of *the development of* regulations. This is not the same as the review of existing regulations. Furthermore, the Senators do not refer generally to OMB power to approve regulations, as OMB suggests. Rather, Senator Kennedy's comments, in discussing § 3504(h) as reported to the Senate floor and before amendment, concern the power of OMB to "overturn" a rule. Similarly, Senator Danforth, in discussing the Kennedy amendment to § 3504(h), speaks of OMB's power of "undoing a collection of information requirement" in a rule. To overturn or undo an informational requirement is not the same as routinely to approve such a requirement. These points may be confirmed by viewing in context the Senators' remarks. As Senator Kennedy is quoted at page 3:

> This legislation [as then drafted] would permit the Director of OMB to *overturn* a rule which was adopted by an agency without providing any procedural rights for the people affected by the rule or for the agency that promulgated the rule. Thus, even if an agency has complied with all the appropriate procedural requirements for public notice and comment, and has spent years compiling an adequate agency record, this legislation would permit OMB to *overturn* that agency decision without even requiring OMB to justify its decision publicly. I have sponsored an amendment which *limits the authority of OMB to overturn* reporting, recordkeeping, and other information collection requirements adopted by a Federal agency in a rulemaking proceeding. (Emphasis added.)[95]

As Senator Danforth is quoted:

> I am willing to accept the Kennedy amendment, which is intended to clarify the authority of the Director of the OMB to review Federal rules and regulations to determine their impact on Federal paperwork. Essentially, as I understand it, *the purpose of the Kennedy amendment is to prevent OMB from undoing a collection of information requirement specifically contained in an agency rule after that requirement has gone through the administrative rulemaking process* if the OMB Director ignored the rulemaking process. This seems fair enough.
>
> I note, however, that this limitation on OMB's authority is confined to requirements specifically contained in agency rules. (Emphasis added.)[96]

---

[95] 126 Cong. Rec. 30178–79 (1980)
[96] *Id.*

424

In context, both of these statements about OMB's ability to "overturn" an agency decision, or to "undo" a collection of information requirement, relate only to the provisions of § 3504(h) that give the Director a voice in the process of "developing rules and regulations." They do not suggest that the legislation, either before or after the amendment to § 3504(h), provided a procedure for the review of existing regulations.

(3) At page 4 of the April 23, 1982, memorandum, reliance is placed on a passage in the House Committee report explaining that the Paperwork Reduction Act covers "recordkeeping" requirements, which had not been clearly covered under the Federal Reports Act.[97] Although this statement does appear in the House report, it does not answer the question whether pre-existing regulations were to be covered or whether regulations were to be reviewed by OMB under § 3504(h) alone.

(4) At page 5, the memorandum states that the Senate amendment to § 3504(h) "did not create an exemption for [information] requests in existing regulations." We agree. However, this is beside the point, for before it was amended, § 3504(h) applied only to the process of *developing* regulations.[98] In fact, the Senate Committee report noted that *new* regulations caused the greatest paperwork burden, thus explaining the provision's emphasis on such regulations.[99] Accordingly, § 3504(h), before it was amended in the Senate, applied only to regulations under development, not to "old" or "existing" regulations. After it was amended, § 3504(h) retained this focus.

(5) At page 6, the memorandum contends that the Treasury Department's interpretation in effect would continue the exemption for the IRS that had been eliminated by the 1980 statute. We do not agree. The legislative history appears to make clear that Congress' attention was focused on the exemption of IRS forms from the Federal Reports Act.[100] That exemption was eliminated. The Act was intended to and does cover the IRS in the same manner as other agencies covered by the Act.

(6) At page 10, the memorandum argues that the Treasury Department's interpretation would "exempt" from coverage by the Act reporting and recordkeeping requirements "in bulletins, instructions, manuals, or guidelines, oral questionnaires, and in any other instrument other than a written form or like document." We do not agree. Treasury is arguing that only § 3504(h) governs OMB review of regulations under the Act. This argument does not deal with the additional questions of which kinds of documents or whether oral requests would be covered by §§ 3504(c) and 3507. We do not interpret Treasury's argument as attempting to establish that bulletins, instructions, manuals or guidelines, or oral requests, could not be covered by the Act.

(7) At page 13, the memorandum concedes that "[s]ection 3504(h) admittedly does not provide by its terms for the assignment [by OMB] of a control number"

---

[97] *See* H.R. Rep No. 835, 96th Cong , 2d Sess 19 (1980).

[98] *See* pages 400 to 403 *supra*

[99] *See* pages 401 to 402 *supra*

[100] *See* pages 418 to 419 *supra*.

to a regulation containing a collection of information requirement. However, the memorandum argues that this fact does not weaken the OMB position because the requirement of a control number for regulations is made implicit by the Act's other provisions.

This argument, however, begs the main question, namely, whether a collection of information requirement in a regulation is synonymous with an information collection request for purposes of OMB review. We believe that the absence of any statement in § 3504(h) that control numbers should be assigned to regulations is simply one additional indication that Congress did not intend to treat regulations in the same manner as information collection requests subject to § 3507. Congress apparently envisioned that a form, questionnaire, or other instrument by which a citizen provides information to the government should have an OMB control number on it. The number's absence would alert a citizen to the fact that the required process had not been followed, thus allowing the citizen to assist, in a sense, in enforcing the Act's provisions. There is no specific indication that Congress contemplated the assignment of control numbers to regulations.[101]

## V. Conclusion

After a thorough analysis of the arguments by all parties to this dispute in light of the language and history of § 3504(h), the language and history of the Act's other provisions, and the statute's general scheme, we conclude that § 3504(h) establishes a procedure which is mandatory for new regulations but which does not include a process for routine review of, and a disapproval mechanism for, existing regulations. We also conclude that the information collection request procedure set out in § 3507 does not apply to existing regulations.

A contrary conclusion, in our view, cannot be reconciled with the Act's language, the statute's overall scheme, or its legislative history. Of particular

---

[101] We recently have received from OMB copies of two letters from Congress dealing with the general question of the coverage of the IRS by the Paperwork Reduction Act. One is a letter to the President signed by the members of the Senate Committee on Government Affairs, dated May 14, 1982, expressing opposition to S 2198, the Taxpayer Compliance Improvement Act of 1982, on the ground that it contains a provision (§ 202) that would exempt the IRS from the Paperwork Reduction Act. We express no view about the bill, but would observe that the points made in the members' letter do not deal directly with the issue before us.

The second letter, dated May 20, 1982, is to the Secretary of the Treasury from Senator Lawton Chiles, a member of the Senate Governmental Affairs Committee and a sponsor of the Act before its passage in 1980. Senator Chiles takes the position that the Act was intended to empower OMB to review collection of information requirements in existing regulations under § 3507 We have two responses to this letter First, Senator Chiles acknowledges that § 3504(h) has a narrower scope than § 3507. His letter attempts to explain § 3504(h)'s operation by arguing that its intent is "to proceduralize the requirements of the Paperwork Act, in particular those of Section 3507, with those of the Administrative Procedure Act. . . " The letter does not deal in specific terms with the basic issue of how the procedures of § 3504(h) relate to the procedures of § 3507, which is the question with which we must deal

Second, in any event, in interpreting the provisions of the Act, we must focus on the written legislative history expressed in Committee reports and floor debate prior to the Act's passage. It is a firmly established principle that subsequent views of individual Congressmen are to be approached with great caution, for they are not the primary expressions of legislative intent existing at the time a statute was actually passed See generally *NLRB* v. *Bell Aerospace Co.*, 416 U.S. 267, 274–75 (1974); *see also United States* v *Rutherford*, 442 U S. 544, 553–54 (1979); *Board of Governors* v *First Lincolnwood Corp.*, 439 U S. 234, 248 (1978). In our view, the effects of the Senate amendment to § 3504(h) were much more significant than apparently Senator Chiles would agree, for the reasons stated in this opinion. We would observe, however, that if our interpretation of the Act as passed is inconsistent with the present intent of Congress, it is, of course, free to enact corrective legislation.

importance is the clearly expressed intent in both the Senate and the House regarding the amendment and subsequent enactment of § 3504(h). Careful analysis of the Act's other major provisions and of its legislative history further supports our conclusion that § 3504(h) provides the exclusive mechanism for OMB review of regulations.

Nonetheless, OMB is given substantial authority over existing regulations by other provisions of the Act, including § 3504(b). We see no insuperable barrier that would prevent OMB from initiating proposals for changes in existing regulations that it deems appropriate under the powers given to it by the Act, which include authority over the IRS and virtually all other agencies of the federal government.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
